IN THE UNITED STATES DISTRICT COURTS
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TINA COMBS o/b/o                                                              PLAINTIFF
K. C.

      v.                                          CIVIL NO. 11-2014

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action on behalf of K. C., a minor child, seeking judicial review pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration (Commissioner), denying K. C.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

**I. Background:**

Plaintiff filed an application for SSI on K. C.'s behalf on September 18, 2007, alleging that K. C. was disabled due to attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, and oppositional defiant disorder ("ODD"). Tr. 115-120, 137. An administrative hearing was held on January 23, 2009. Tr. 32-69. K. C. was present and represented by council. Tr. 419-462. At the time, K. C. was 14 years old and in the seventh grade. Tr. 39, 41.

The Administrative Law Judge ("ALJ"), in a written decision dated October 14, 2009, found that although severe, K.C.'s ADHD, bipolar disorder, and ODD did not meet, medically equal, or functionally equal one of the impairments listed in 20 C. F. R. Part 404, Subpart P, Appendix 1. Tr. 90-91. He concluded that K. C. had no limitations in acquiring and using information, moving about and manipulating objects, caring for herself, and in health and physical well-being; less than marked limitations with regard to attending and completing tasks; and, marked limitations in the area of interacting and relating with others. Tr. 91-98.

On November 22, 2010, the Appeals Council declined to review this decision. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the matter is now ready for decision. Docs. # 8, 9.

**II. Standard of Review:**

The court's review is limited to whether the decision of the Commissioner to deny benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

In determining the plaintiff's claim, the ALJ followed the sequential evaluation process, set forth in 20 C.F.R. § 416.924. Under this most recent standard, a child must prove that she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(c)(I); 20 C.F.R. § 416.906.

When passing the law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).

Consequently, under this evaluation process, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a

determination that a child is disabled requires the following three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is an impairment that is more than a slight abnormality. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(c). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings, will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d). Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. *See* 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

    If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to an impairment in the Listings. *See* 20 C.F.R. § 416.926a(d). A marked limitation is defined as an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2). An extreme limitation is defined as "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously

3

limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *See* 20 C.F.R. § 416.926a(e)(3).

## III. Discussion:

Of particular concern to the undersigned is the ALJ's determination that K. C. had less than marked limitations in the area of attending and completing tasks and no limitations with regard to caring for herself. The domain of attending and completing tasks focuses on how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities. 20 C. F. R. § 419.926a(h). This includes an evaluation of the pace at which she performs activities and the ease of changing activities. *Id*. The regulations provide that a school-age child without an impairment should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. *Id*. The child should be able to concentrate on details and not make careless mistakes in her work (beyond what would be expected in other children of the same age who do not have impairments). *Id*. Children should be able to change activities or routines without distractions; stay on task and in place when appropriate; and, sustain attention well enough to participate in group sports, read alone, complete family chores, and complete transition tasks (get ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodations. 20 C. F. R. § 416.926a(h)(2)(iv).

K. C. testified that she had difficulty keeping her mind on class work and needed reminders to help her mother with chores. Plaintiff also testified that K. C. had difficulty completing tasks and concentrating, and that she had to fight with K. C. to get her to wash the dishes or clean her room. On a child function report completed by Plaintiff prior to the hearing, she also indicated K. C. did complete her homework, but did not complete her homework on time, keep busy on her own, finish things she started, or complete chores most of the time. Tr. 124-132.

4

The medical evidence reveals that K. C. carried diagnoses of ADHD, ODD, and bipolar disorder. School records indicate that these diagnoses had a negative impact on K. C.'s academic achievement. A progress report for the first quarter of the 2008-2009 school year, her sixth grade year, indicated that K. C. had a 34 (F) average in English, a 63 (D) in Math, an 86 (B) in Science, a 66 (D) in Geography, an F in Art, and a 100 (A+) in Keyboarding. Tr. 167. The teacher noted that a vocabulary quiz was missing. Tr. 167. A report card from Alma Middle School for the second term of the 2008-2009 school year reveals a D- average in health, an A+ in keyboarding, an F in Science, a C in social studies, an F in language arts, an A+ in math, an A+ in athletics, and an A- in choir. Tr. 219. However, K. C. ultimately ended the year with C's, D's, and F's. Tr. 454-456.

Additional records indicate that K. C. began her fifth grade school year (2007-2008) with A's, B's, and C's, but finished it out with D's and F's. Tr. 456-459. She was experiencing difficulties concentrating, sitting still, and initiating sleep. Tr. 456-459.

To support his finding of less than marked limitations, the ALJ relied on a treatment note from Dr. Johnson dated November 3, 2008, during which K. C.'s parents indicated that they were happy with her ADHD medication. He contends that Dr. Johnson noted no hyperactive/impulsive behavior. Upon review of this record, however, we note that Dr. Johnson's examination actually revealed pychomotor abnormalities including psychomotor hyperactivity and impulsivity. Tr. 93, 435.

We also note that K. C. underwent approximately six months of court ordered psychiatric treatment at Vista Health Psychiatric Clinic ("Vista Health") beginning in September 2007. Tr. 231-291, 352-430, 460-518. During her treatment, she was noted to have extreme difficulties with staying on task, completing assignments, following instructions, aggression, inappropriate flirtations and interaction with her male peers, and sexually inappropriate dress. K. C. was often irritable during group activities and would leave the group without permission. At the time of her discharge in February 2008, little to no

progress had been made, she continued to exhibit poor overall behavior, fail to follow directions, require frequent redirection, and exhibit promiscuous behavior. Tr. 460-518.

In March 2008, Dr. Monty Atchley performed a diagnostic evaluation of K. C. Tr. 448-449. He noted that K. C. was initially diagnosed with ADHD at age 5. At age 10, she began experiencing mood issues, and was ultimately diagnosed with bipolar I disorder in 2006. Her symptoms included generalized worrying; insomnia; impaired concentration; irritability; panic attacks; rapid and racing thoughts; pressured speech; an unusually high activity level; mood related behaviors; dramatic and rapid mood shifts lasting hours and days; intense periods of rage, worse during menstrual cycle; failure to listen to and follow directives; disrespectful (often interrupting) tendencies; forgetfulness; distractibility; fidgetiness; difficulty engaging in quiet activities; easy annoyance; defiance; blaming others; destructive (destroys property) behaviors; fear of being criticized; separation issues with her mother; low mood; changes in sleep pattern (up and down); changes in appetite (up and down); changes in self-esteem (low to grandiose); hopelessness; periodic suicidal ideation without a plan; marked decreases in pleasure; significant weight change (gained 13 pounds on Abilify); pain in legs, shoulder, and stomach; and, muscle tension and headache. Tr. 448-449.

On June 25, 2008, Dr. D. H. Pennington noted that K. C.'s mood swings persisted. Tr. 521. Plaintiff reported that most of K.C.'s problems were the result of her attitude, "like they always have."[1] At this time, K. C. had an angry/hostile affect, an irritable mood, and was dressed seductively. She did not want therapy unless she could choose her own therapist. However, Plaintiff advised the doctor that K. C. had been court-ordered to participate in therapy, and the doctor advised her that therapy was mandatory. Dr. Pennington increased K. C.'s dosage of Trileptal and advised her to continue Focalin. Tr. 521.

---

[1] We note that the ALJ credited Dr. Pennington with this statement, rather than Plaintiff. However, a review of the record makes clear that it was Plaintiff's opinion that K. C.'s behavior was related to her attitude. It was also Plaintiff's, rather than the doctor's, opinion that K. C. was not trying in school. Tr. 454-459.

6

On August 19, 2008, K. C.'s medications were working well, but she remained hyper at times. Tr. 439-441. Dr. Stewart prescribed Focalin XR, Claritin, and Clonidine. Tr. 439-441.

In November 2008, records from the Alma Cornerstone Clinic revealed continued problems with mood swings. Tr. 548. Further, in September 2009, she was noted to be hyperactive. Tr. 551.

The undersigned believes that the evidence clearly indicates that K. C. experienced limitations with regard to her ability to attend to and complete tasks that were not considered by the ALJ. Accordingly, we can not say that substantial evidence supports his finding regarding this domain. Therefore, remand is necessary.

In addition, the evidence also suggests some limitations in K. C.'s ability to care for herself. This domain considers how well a child maintains a healthy emotional and physical state, including how well the child satisfies her physical and emotional wants and needs in appropriate ways. 20 C. F. R. § 416.926a(k). Areas of interest include how well the child copes with stress and changes in the environment and whether the child takes care of her own health, possessions, and living area. *Id*. The child's ability to distinguish right from wrong, demonstrate consistent control over her behavior, and avoid behaviors that are unsafe or otherwise not good for her is also of interest in this category. *Id*.

Of particular concern to the undersigned is the evidence documenting K. C.'s defiant and hypersexual behaviors. At the time of the administrative proceedings, K. C. was involved with the courts regarding an incident of alleged sexual abuse that she perpetrated against her then six year old brother. As a result, K.C. was court ordered to participate in treatment at Vista Health. Her parents also had her placed on oral contraceptives, due to concern from her doctor regarding her behavior. While in treatment at Vista Health, records indicate that she was reprimanded on numerous occasions for inappropriate flirtatious behavior with her male peers and dressing provocatively. In an effort to dissuade her sexual behavior, a mechanical doll was sent home with her to give her a taste of what it would be like to be a

teenage mother. After failing the assignment for throwing the doll when it cried out on the first night, she took it home over a weekend and scored a 72%.

Evidence also suggests that K. C. stole items from her classmates, exhibited aggressive tendencies, and refused to follow rules. In fact, her behavior was such that it warranted a diagnosis of ODD. ODD is a pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least 6 months and is characterized by at least four of the following behaviors: losing temper, arguing with adults, actively defying or refusing to comply with the requests or rules of adults, deliberately doing things that will annoy other people, blaming others for his or her own mistakes or misbehavior, being touch or easily annoyed by others, being angry and resentful, or being spiteful or vindictive. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 100 (4th ed. 2000). Records indicate that K. C. was consistently disruptive, impulsive, resistant, oppositional, confrontational, and intrusive. Tr. 231-291, 352-430, 460-518.

The ALJ concluded that K. C. had no limitations in this domain of functioning. However, when viewed collectively, we believe this evidence brings into question K. C.'s ability to discriminate right from wrong and avoid behaviors that are unsafe or otherwise not good for her. Accordingly, we believe remand is necessary to allow the ALJ to reconsider the evidence regarding K. C.'s ability to attend to and complete tasks, as well as care for herself.

### III. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

AO72A
(Rev. 8/82)

DATED this 27th day of February 2012.

                                           /s/ *J. Marschewski*
                                           HON. JAMES R. MARSCHEWSKI
                                           CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)